**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

IVAN CORREA MUNIZ, ET AL.

Plaintiffs,

v.                                                          Civil No. 13-1665 (DRD)

WALGREEN CO.,

Defendant.

**OPINION AND ORDER**

On August 28, 2013, Plaintiffs Ivan Correa Muñiz and Juliana Santoni Pares ("Plaintiffs"), representing themselves and as parents of JECS, filed the instant matter alleging that Defendant Walgreen Co. ("Defendant" or "Walgreen") is liable for injuries suffered by JECS when it negligently dispatched a wrong prescription medication in the minor's name.

Pending before the Court is Defendant's *Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction* (Docket No. 11), Plaintiffs' response in opposition and supplemental motion in opposition (Docket Nos. 14 and 16), and Walgreen's reply (Docket No. 18).[1]  The main issue in dispute amongst the parties is whether Walgreen has sufficient contacts with Puerto Rico to support personal jurisdiction.  For the reasons discussed

---

[1] On April 1, 2014, the Court entered an *Order* (Docket No. 15) holding in abeyance Defendant's *Motion to Dismiss* and granting Plaintiffs' request to conduct jurisdictional discovery.

1

herein, Walgreen's *Motion to Dismiss* (Docket No. 11) is hereby **GRANTED**.

## I.   BACKGROUND

Walgreen Co. is a Illinois corporation with its principal place of business in Illinois (Docket No. 11-1). Walgreen of San Patricio, Inc. is a corporation duly organized under the laws of Puerto Rico as of July 22, 1963 (Docket No. 11-2). Walgreen Co. indeed has a designated office in Puerto Rico and a resident agent (Docket No. 14-1). Walgreens of San Patricio is a wholly owned subsidiary of Walgreen Co. and thus both exist as separate corporate entities (Docket No. 11-1). Walgreen of San Patricio maintains its accounting records at their headquarters in 580 Marginal Buchanan, Extension Villa Caparra, Guaynabo, Puerto Rico 00966. Id. Further, Walgreen San Patricio directly manages multiple stores in Puerto Rico and pays the salary of its employees, all of who are covered under the State Insurance Fund of Puerto Rico. Id. Lastly, Walgreen of San Patricio files its Annual Report separate from Walgreen Co. with the Puerto Rico State Department. Id.

On the other hand, Walgreen Co. and Walgreen of San Patricio do not have separate websites. *See* Docket No. 14-4. In fact, www.walgreens.com allows customers to refill their prescriptions online and pick them up at their local pharmacy, contains a store locator feature, provides coupons redeemable at

all of their stores, provides access to the "Balance Rewards" program, its nationwide rewards program, and allows customers to purchase goods online and have them shipped to Puerto Rico. *See* Docket No. 14, at 5.

Walgreen Co. has a general standard protocol for the distribution and dispatch of prescription medication, which Walgreen of San Patricio specifically adapts to its pharmacies in Puerto Rico in order to comply with both federal and local regulations. *See* Docket No. 16-1, at 4. All of Defendant's pharmacies use a system called "Intercom Plus," which is used to scan prescriptions, prepare labels, and verify barcodes. Id. at 4-5.

According to the complaint, on August 28, 2012, Plaintiff Juliana Santoni went the Walgreen pharmacy located at 2505 Carr. 841, Guaynabo, Puerto Rico to fill a prescription of TRAMADOL/APAP 37.5MG/325MG prescribed to her by Dr. M. Martino Berio. To obtain said medicine, a patient must have a prescription and the prescription must show that the patient is of legal age. The prescription was allegedly dispatched under Juliana Santoni's child's name, who was three years old at the time.

After picking up her prescription from the pharmacy, Plaintiff Juliana Santoni arrived at her residence and placed the Walgreen prescription bag in her medicine cabinet. Juliana

Santoni had plans for that evening with friends, so the child's father, Plaintiff Ivan Correa, stayed home taking care of their son.

At the time, Plaintiffs' son had been taking Amoxicillin 400 MG to treat flu symptoms he had been experiencing.  However, Plaintiff Ivan Correa had never administered the Amoxicillin to his son, and was therefore not aware of what the medicine looked like, what it was, or how it was administered.  At some point during that evening, Juliana Santoni called the house to check on her son and asked Ivan Correa to give the Amoxicillin to the child.

Ivan Correa went to the medicine cabinet and retrieved the unopened prescription bag that Juliana Santoni had placed there earlier in the day.  Inside the prescription bag was the prescription bottle containing Santoni's TRAMADOL/APAP 37.5MG/325MG but erroneously labeled with the child's name. Ivan Correa then proceeded to administer one of the TRAMADOL/APAP 37.5MG/325MG pills to his child.

During the night, Correa went into his son's room while he was sleeping and discovered that the child had not only thrown up, but was also deeply asleep.  Correa immediately called his son's pediatrician, who advised him to take his son to the hospital if he threw up again to avoid dehydration.  The child did not throw up again that night.

4

The next morning, Juliana Santoni noticed that her son appeared drowsy and was moving slowly. After dropping the child off in daycare, Juliana Santoni returned home to take her medication when she noticed for the first time that the prescription bag she had placed in the medicine cabinet the day before had been opened. When she approached the child's father to inquire about her medication, he informed her of the events that had transpired the previous evening.

The parents immediately took the child to the pediatrician, who explained that the drug had most likely caused the child to have multiple seizures during his sleep, thereby causing him to throw up. Later that day, the parents returned to the Walgreen pharmacy that allegedly dispatched the wrong medication and confronted the store manager, who immediately apologized and encouraged them to take anything they wanted from the store, an offer the Plaintiffs refused.

As a result of Defendant's negligence, Plaintiffs aver that their minor child is now afraid of sleeping alone, getting sick, and taking any kind of medication.

## II.   FED R. CIV. P. 12(B)(2) STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)"), a defendant may move to dismiss a complaint for lack of personal jurisdiction. Where, as here, the Court refrains from holding an evidentiary hearing, the Court applies the "prima facie"

5

standard. <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618-19 (1st Cir. 2001)(internal citations omitted); *see generally* <u>Stars for Art Prod. FZ, LLC v. Dandana, LLC</u>, 806 F. Supp. 2d 437, 452 (D.Mass. 2011).

Under the prima facie standard, the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the litigants. <u>Id</u>. To meet its burden, the plaintiff may not rely on the pleadings. <u>Negron-Torres v. Verizon Commc'ns, Inc.</u>, 478 F.3d 19, 23 (1st Cir. 2007)(internal citations omitted). Rather, the plaintiff must proffer properly supported facts. <u>Id</u>. The plaintiff's evidence is assumed to be true and construed in the light most favorable to the plaintiff. <u>Astro-Med, Inc. V. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 8 (1st Cir. 2009)(internal citations omitted). A defendant's evidence is only relevant to the extent that it is uncontradicted by the plaintiff. <u>Id</u>. Thus, the make-or-break standard is whether "the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 50-51 (1st Cir. 2002)(internal citations omitted).

### III.   DISCUSSION

To establish the Court's personal jurisdiction over a party, Plaintiffs must satisfy both Puerto Rico's long-arm statute and the Due Process Clause of the Fourteenth Amendment. Negron-Torres, 478 F.3d at 24 (citing Swiss Am. Bank, 274 F.3d at 618). As Puerto Rico's long-arm statute extends jurisdiction to the maximum limits imposed by the Constitution, the due process analysis is determinative. Id.

Under the Due Process Clause, a plaintiff must prove the existence of either specific or general jurisdiction. Negron-Torres, 478 F.3d at 24 (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)). The critical inquiry in determining whether either specific or general jurisdiction exists is "the existence of 'minimum contacts' between the nonresident defendant and the forum." Id. Therefore, the Court must find that the nonresident defendant maintains sufficient "minimum contacts" with Puerto Rico so as to comport to "traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).

### A. Specific Jurisdiction

Specific jurisdiction over a nonresident defendant exists "where the cause of action arises directly out of, or related to, the defendant's forum-based contacts." United Elec., Radio

7

& Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089-91 (1st Cir. 1992). The First Circuit divides the analysis into three categories: relatedness, purposeful availment, and reasonableness. *See* Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

With regards to the first prong, the First Circuit has emphasized that causation is central to a relatedness finding, accentuating that

> [t]he relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection. This court steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect.... A broad 'but-for' argument is generally insufficient. Because 'but for' events can be very remote, ... due process demands something like a 'proximate cause' nexus.

Negron-Torres, 478 F.3d at 25 (quoting Harlow, 432 F.3d at 61-62)(internal citations and quotations omitted).

The relatedness element requires a "nexus" between Defendant's contacts with Puerto Rico and Plaintiffs' injury "such . . . [that] the litigation itself is founded directly on those activities." Mass. Sch. Of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Plaintiffs allege that

Defendant is liable in tort for the damages they suffered when one of its subsidiaries, Walgreen of San Patricio, negligently dispatched TRAMADOL/APAP 37.5MG/325MG in the child's name instead of his mother's, thereby leading Plaintiff Ivan Correa to erroneously administer said medicine to his minor child.

The relatedness inquiry in the tort context concerns whether Walgreen Co.'s contacts with Puerto Rico were the "cause in fact" and "legal cause" of Plaintiffs' cause of action. Mass. Sch. of Law, 142 F.3d at 35 (internal citations and quotations omitted); Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996). Cause in fact refers to whether "the injury would not have occurred 'but for' the defendant's forum-state activity" whereas legal cause refers to whether "the defendant's in-state conduct gave birth to the cause of action." Id. (internal citations and quotations omitted).

Defendant's contacts with Puerto Rico, mainly through the use of its interactive website www.walgreens.com, which facilities the prescription refilling process, bares no relationship to Plaintiffs alleged harm. Www.walgreens.com is neither the but-for or actual cause of Plaintiffs injury because there is no indication that Plaintiffs used walgreens.com to refill the prescription which was allegedly negligently dispatched. Hurley v. Cancun Playa Oasis Int'l Hotels, No. 99-574, 1999 WL 718556, at *1 (E.D. Pa. Aug. 31, 1999)(holding that

the plaintiff's tort claim did not arise out of the defendant's website because the plaintiff did not contend that he used the website to make a reservation).  Plaintiffs would have fared no better had they argued that they had utilized walgreens.com to refill their prescriptions, as they simply cannot establish that the website is causally related to their injuries.  Plaintiffs' injury would have occurred regardless of Walgreen's contacts with Puerto Rico, as there is simply no evidence that Defendant Walgreen Co.'s in-state conduct gave rise to Plaintiffs' tort claim.  In fact, Plaintiffs' factual assertions, if readily proven, clearly establish that Plaintiffs' alleged harm was directly caused by Walgreen's subsidiary, a Puerto Rico corporation.

Hence, Plaintiffs cannot satisfy the requirements of the relatedness test, as Walgreen's contacts with Puerto Rico were not the proximate cause of Plaintiffs' injuries.  *See* United Elec., 960 F.2d at 1089 ("First, we steadfastly reject the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect.").  In the instant case, Defendant's contacts with Puerto Rico do not reach the requisite threshold, as there is no "in-state conduct" forming "an important, or at least material, element of proof."  Id. (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir.

1986))(internal quotations omitted).  As an affirmative finding on each of the three elements is required, the Court need not go further as to the remaining elements.  *See* <u>Phillips Exeter Academy</u>, 196 F.3d at 288.  As such, the Court lacks specific personal jurisdiction over Walgreen Co.

## B. General Jurisdiction

Federal district courts have general jurisdiction when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." <u>United Elec.</u>, 960 F.2d at 1088.  Plaintiffs' arguments to support a finding of general jurisdiction with regards to Walgreen's contacts in Puerto Rico are twofold.  First, Plaintiffs aver that Walgreen has engaged in continuous and systematic activity in Puerto Rico by virtue of its ownership interest in, and control over, Walgreen of San Patricio.  Second, Plaintiffs argue that Walgreen has engaged in continuous and systematic activity with Puerto Rico by virtue of its relationship with Puerto Rico, independent of its subsidiary.

### *Piercing the Corporate Veil*

Plaintiffs argue that Walgreen of San Patricio's contacts with Puerto Rico are attributable to Walgreen Co. because

Walgreen Co. is Walgreen of San Patricio's parent and alter-ego. The Court is unpersuaded.

The Court may not exercise personal jurisdiction over a parent corporation simply by virtue of its subsidiary's contacts with the forum. Negron-Torres, 478 F.3d at 27 (citing Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980). The Court may, under certain circumstances, "pierce the corporate veil" to attribute the subsidiary's contacts to the parent. Id. Puerto Rico law determines whether veil piercing is warranted. Id. To pierce the corporate veil under Puerto Rico law, Plaintiffs must produce "strong and robust evidence . . . showing the parent to have that degree of control over the subsidiary as to render the latter a mere shell for the former." Id. (internal citations and quotations omitted).

In the case at bar, Plaintiffs fail to present any pleading, let alone strong and robust pleadings, showing that Walgreen Co. exercised sufficient control over Walgreen of San Patricio to warrant piercing the corporate veil. Plaintiffs aver that both Walgreen and Walgreen of San Patricio: (1) do business as Walgreens; (2) share the same website, wherein customers can refill their prescriptions online and local Walgreen pharmacies nationwide; (3) share common trademarks, logos, advertisements, marketing image and integrated sales system; and (4) share a standard protocol, established by

Walgreen, for the distribution and/or dispatch of pharmaceutical drugs. (Docket Nos. 14 and 16).

These facts, without more, simply indicate that Walgreen Co. and Walgreen of San Patricio share a close branding relationship. *See* <u>Diamond Chem. Co. v. Atofina Chems., Inc.</u>, 268 F. Supp. 2d 1, 8-9 (D.D.C. 2003)("Joint promotion without more does not mandate the finding that a subsidiary is a mere shell for its parent corporation."). There is no indication in of the pleadings that Walgreen disregards corporate formalities, exercises control over Walgreen of San Patricio's day-to-day operations, had overlapping directors and personnel, or that Walgreen of San Patricio was undercapitalized. *See* <u>De Castro v. Sanifill, Inc.</u>, 198 F.3d 282, 284 (1st Cir. 1999); *see also* <u>Satellite Broad. Cable, Inc. v. Telefonica de Espana</u>, 786 F. Supp. 1089, 1100 (D. Puerto Rico 1992). Rather, the evidence indicates that Walgreen and Walgreen of San Patricio operate independently. Walgreen of San Patricio owns and operates the pharmacy where the alleged tortious incident transpired, files independent annual reports, has its own headquarters, independently obtains all necessary licensing and permits required by the Commonwealth of Puerto Rico, maintains separate accounting books, and pays the salaries of its employees, who are all covered under the State Insurance Fund of Puerto Rico. *See* Docket No. 11-1.

Accordingly, the Court finds there is neither strong nor robust evidence demonstrating that Walgreen of San Patricio is but a mere shell of its parent, Walgreen Co.

### *Walgreen Co.'s Contacts With Puerto Rico*

Lastly, Plaintiffs argue that Walgreen Co. has sufficient minimum contacts in Puerto Rico, standing alone, to warrant the exercise of personal jurisdiction.  The Court may exercise general jurisdiction over Walgreen Co. if Plaintiffs establish that: (1) Walgreens Co. has sufficient contacts with Puerto Rico; (2) that said contacts with Puerto Rico are purposeful; and (3) maintaining jurisdiction is reasonable.  Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010)(citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)).  Contacts are deemed sufficient if they are systematic and continuous rather than isolated and casual.  Id. (internal citations omitted); *see generally* Int'l Shoe, 326 U.S. at 317.  In determining whether Walgreen's contacts with Puerto Rico are sufficient, the Court's analysis is "highly idiosyncratic" and fact specific, not "mechanical or qualitative."  Id. (internal citations omitted).  At first glance, it seems like the Court has general jurisdiction over Defendant Walgreen Co.; however, after conducting an in-depth analysis of the underlying factual allegations, we conclude that maintaining jurisdiction would not be reasonable.

14

According to Plaintiffs, Walgreen Co. has sufficient purposeful contacts in Puerto Rico given that it: (1) conducts a nationwide promotional campaign for all of its pharmacies; (b) provides services nationwide, such as refilling prescriptions; (c) has only one website covering all of its pharmacies wherein Puerto Rico resident can purchase goods and have them shipped to the island; and (d) has a designated office for Puerto Rico and a Resident Agent. *See* Docket No. 14, at 3-8.  We agree.

Plaintiffs aver, and the Court concurs, that the Defendant has sufficient minimum contacts with Puerto Rico due to the interactive nature of its website, the fact that it is registered as a Foreign Corporation authorized to do business at the Department of State for the Commonwealth of Puerto Rico, and has both a registered agent and a designated office for this jurisdiction.

Walgreen Co. directly provides services to its Puerto Rican customers through their website, www.walgreens.com (Docket No. 14, at 5).   Said website permits individuals to refill their prescriptions online at the pharmacy of their choosing and allows individuals to use the "Store Locator" feature to locate Walgreen pharmacies nationwide.  Further, customers may purchase goods online and have them shipped to Puerto Rico.

A website is sufficient to confer personal jurisdiction if "the defendant has *actually* and *purposefully* conducted

commercial or other transactions with forum state residents through its websites." Cossaboon, 600 F.3d at 35 (emphasis added)(collecting cases). Something more than simply maintaining a website accessible to everyone online is necessary, "such as interactive features which allow the successful online ordering of the defendant's products." McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005)("The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible....").

The facts clearly demonstrate that Defendant's contacts with Puerto Rico, through www.walgreens.com, are continuous and systematic. Defendant's website not only allows customers to refill their prescriptions online, but provides for the online sale of products to Puerto Rico consumers.[2] Thus, Plaintiffs have satisfied the first two prongs.

We now turn to whether exercising jurisdiction over Walgreen is reasonable under the circumstances. See Cossaboon, 600 F.3d at 33. This third requirement is "secondary rather than primary; unless the defendant has some cognizable contacts

---

[2] Plaintiffs' assertion that Defendant has sufficient contacts with Puerto Rico through its registered agent and local office is unavailing, as appointing a registered agent for service of process purposes and maintaining an office that is currently not conducting any business does not amount to continuous and systematic for minimum contact purposes. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 88-90 (1st Cir. 1990).

with the proposed forum, the court cannot assert general jurisdiction." Id. (quoting Sandstrom, 904 F.2d at 89)(internal quotations omitted). In analyzing the reasonableness inquiry, courts weigh the so-called "Gestalt factors," which include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Harlow, 432 F.3d at 66-67 ("Even where purposefully generated contacts exist, courts must consider a panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal.")(internal citations and quotations omitted); see U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001)(plaintiff must demonstrate that exercising jurisdiction would be reasonable).

At the outset, the Court notes as to the first factor that Defendant's burden of appearing in Puerto Rico would be minimal. This first factor is "only meaningful where a party can demonstrate some kind of special or unusual burden," which Walgreen Co., a multi-billion dollar corporation, has failed to do. Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Thus, the first factor weighs in Plaintiffs' favor.

The second, third, and fourth factors weigh in neither parties favor. For purposes of this analysis, it is important

to stress that Defendant Walgreen Co. does not contend that Plaintiffs do not have a valid cause of action, they are simply accentuating that the proper Defendant is their subsidiary, Walgreen of San Patricio. Hence, Walgreen Co. argues that the appropriate forum to litigate this dispute is the Court of First Instance of the Commonwealth of Puerto Rico, as the appropriate parties are all citizens of the Commonwealth of Puerto Rico. Therefore, the interests of Puerto Rico in exercising jurisdiction over one who causes tortious injury within its borders will remain intact, as Puerto Rico law applies regardless of the forum. Additionally, Plaintiffs have not shown how they would be inconvenienced by having to litigate this case in state court or how the administration of justice would be impeded by having to litigate the instant matter in the state tribunal against Walgreen of San Patricio.

However, the fifth and final factor weighs heavily in the Defendant's favor. In the case at bar, Plaintiffs are suing Walgreen Co., the parent company of the subsidiary where the alleged harm occurred, merely to achieve federal diversity jurisdiction. As we previously discussed, Walgreen of San Patricio is an independently run subsidiary of Walgreen Co., and the alleged tortious actions occurred as a result of the alleged negligence of individuals employed and supervised by Walgreen of San Patricio. No evidence has been presented demonstrating that

18

Plaintiffs utilized www.walgreens.com to refill the prescription that eventually harmed their minor child.  In fact, there is no evidence whatsoever that Defendant's contacts with Puerto Rico, as minimal as they are, in any way contributed to the harm suffered by Plaintiffs and their minor son.  Therefore, policy considerations weigh heavily against subjecting a foreign corporation to litigate a case in federal court when said corporation did not cause Plaintiffs' harm.

Hence, exercising general jurisdiction over Walgreen Co. to entertain Plaintiffs' causes of action would be unreasonable, especially given the fact that Plaintiffs can file suit in state court against Walgreen of San Patricio, the appropriate Defendant in the case at bar.  Accordingly, Defendant's *Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction* (Docket No. 11) is hereby **GRANTED**.[3]

---

[3]  Lastly, the Court notes that in Gonzalez v. Walgreens Co., 878 F.2d 560 (1st Cir. 1989), the First Circuit determined that the U.S. District Court in Puerto Rico lacked personal jurisdiction over defendant Walgreen Co.  The First Circuit concluded that the plaintiffs had failed to demonstrate that Walgreen Co. was liable for the acts of its subsidiary, Walgreen of San Patricio, under an agency theory.  Id.

### IV.   CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** Defendant's *Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction* (Docket No. 11).   Judgment of dismissal is to be entered as to Walgreen Co.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of September, 2014.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge